M9N8NEWP

```
 1    UNITED STATES DISTRICT COURT
      SOUTHERN DISTRICT OF NEW YORK
 2    ------------------------------x

 3    UNITED STATES OF AMERICA,

 4              v.                         S1 20 Cr. 351 (SHS)

 5    ROBERT NEWLAND,

 6                  Defendant.             Arraignment/Plea

 7    ------------------------------x

 8                                         New York, N.Y.
                                           September 23, 2022
 9                                         11:00 a.m.

10    Before:

11                    HON. SIDNEY H. STEIN,

12                                         District Judge

13                         APPEARANCES

14    DAMIAN WILLIAMS
           United States Attorney for the
15         Southern District of New York
      BY:  CECILIA E. VOGEL
16         JESSICA K. FEINSTEIN
           Assistant United States Attorneys
17
      DECHERT LLP
18         Attorneys for Defendant
      BY:  ROGER A. BURLINGAME
19         DAVID N. KELLEY

20
      Also present:  TAELOR NISBETH, Pretrial Services
21

22

23

24

25
```

M9N8NEWP

| | |
|---|---|
| 1 | (In open court; case called) |
| 2 | THE DEPUTY CLERK:  Counsel, please state your names |
| 3 | for the record. |
| 4 | MS. VOGEL:  Good morning, your Honor.  Cecilia Vogel |
| 5 | for the government.  And I am joined by my colleague, Jessica |
| 6 | Feinstein. |
| 7 | THE COURT:  Good morning. |
| 8 | MR. BURLINGAME:  Good morning, your Honor.  Roger |
| 9 | Burlingame and David Kelley for Mr. Newland. |
| 10 | MR. KELLEY:  Good morning, your Honor. |
| 11 | THE COURT:  Good morning. |
| 12 | And Probation Officer Nisbeth is present as well. |
| 13 | Welcome. |
| 14 | MS. NISBETH:  Good morning.  Taelor Nisbeth, Pretrial |
| 15 | Services. |
| 16 | THE COURT:  This is our first meeting in connection |
| 17 | with this case.  I have before me S1.  Let me take a look at |
| 18 | it. |
| 19 | Government, why don't you tell me a little bit about |
| 20 | the case. |
| 21 | MS. VOGEL:  Yes, your Honor. |
| 22 | Mr. Newland was indicted last year in connection -- |
| 23 | THE COURT:  Let's get the microphones on, please. |
| 24 | MS. VOGEL:  Mr. Newland was indicted last year in |
| 25 | connection with this case.  He was a co-conspirator of Inigo |

M9N8NEWP

| | |
|---|---|
| 1 | Philbrick, who has already pled guilty and whom you have |
| 2 | sentenced.  He was a financial adviser to Mr. Philbrick, and |
| 3 | Mr. Newland is charged in two counts.  Count One is wire fraud |
| 4 | and Count Two is conspiracy to commit wire fraud.  And the |
| 5 | indictment was unsealed as to Mr. Newland before Inigo |
| 6 | Philbrick was sentenced, and by that time Mr. Newland had been |
| 7 | arrested in the United Kingdom.  That was, I believe, in |
| 8 | February of this year. |
| 9 | He has since consented to extradition.  He arrived |
| 10 | yesterday evening on extradition, and he is here now to be |
| 11 | presented and arraigned, and we anticipate that he will enter a |
| 12 | guilty plea pursuant to a plea agreement. |
| 13 | THE COURT:  Thank you. |
| 14 | Mr. Burlingame, was that your intention today, to have |
| 15 | your client enter a plea of guilty? |
| 16 | MR. BURLINGAME:  It is, your Honor. |
| 17 | THE COURT:  To Count Two of the superseding |
| 18 | indictment? |
| 19 | MR. BURLINGAME:  Yes, Judge. |
| 20 | THE COURT:  Because this is the first time we have met |
| 21 | in connection with Mr. Newland, I wish to inform you that |
| 22 | pursuant to Rule 5(f) of the Federal Rules of Criminal |
| 23 | Procedure, I have already entered a written order confirming |
| 24 | the government's disclosure obligations under *Brady* and its |
| 25 | progeny and the possible consequences of violating that order. |

M9N8NEWP

1    I do order the government today to comply with its disclosure

2    obligations under *Brady* and its progeny.  I direct the

3    government attorneys to read the 5(f) order that has been

4    entered in this case with care, and the government must comply

5    with it.  If the government fails to comply with the 5(f)

6    order, certain consequences may follow, including the

7    imposition of sanctions and any other consequence that is just

8    under the circumstances.

9            Given the fact that the defense attorney has stated

10   that the defendant wishes to plead guilty, I am going to ask

11   Mr. Newland to stand.

12           Ms. Blakely, if you will administer the oath.

13           (Defendant sworn)

14           THE DEPUTY CLERK:  State your full name and spell your

15   last name for the record.

16           THE DEFENDANT:  Geoffrey Robert Newland,

17   N-E-W-L-A-N-D.

18           THE COURT:  Mr. Newland, do you understand that you

19   are now under oath and that if you answer any of my questions

20   falsely, your false or untrue answers may later be used against

21   you in another prosecution for perjury or for making a false

22   statement?

23           THE DEFENDANT:  Yes, your Honor.

24           THE COURT:  How old are you, sir?

25           THE DEFENDANT:  44.

M9N8NEWP

1          THE COURT:  How far did you go in school?

2          THE DEFENDANT:  To master's level.

3          THE COURT:  What is the equivalent?  Did you do four

4   years of university?

5          THE DEFENDANT:  Five, sir.

6          THE COURT:  So you have what in the United States

7   would be a bachelor's degree and a master's degree?

8          THE DEFENDANT:  Yes, your Honor.

9          THE COURT:  Thank you.

10         Are you able to read, write, speak, and understand

11   English?

12         THE DEFENDANT:  Yes.

13         THE COURT:  English is your native language, correct?

14         THE DEFENDANT:  Yes, your Honor.

15         THE COURT:  Are you now or have you recently been

16   under the care of a doctor or a psychiatrist?

17         THE DEFENDANT:  No.

18         THE COURT:  Have you ever been treated or hospitalized

19   for any mental illness or any type of addiction, including drug

20   or alcohol addiction?

21         THE DEFENDANT:  No.

22         THE COURT:  In the past 24 hours, sir, have you taken

23   any drugs, medicine, or pills, or consumed any alcohol?

24         THE DEFENDANT:  No.

25         THE COURT:  Is your mind clear today?

M9N8NEWP

1        THE DEFENDANT:  Yes.

2        THE COURT:  Are you feeling all right?

3        THE DEFENDANT:  Yes.

4        THE COURT:  Do you have an attorney here?

5        THE DEFENDANT:  Yes.

6        THE COURT:  Who are those attorneys?

7        THE DEFENDANT:  Roger Burlingame and David Kelley.

8        THE COURT:  Thank you.

9        Mr. Burlingame, do you have any doubt as to Mr.

10   Newland's competence to plead at this time?

11        MR. BURLINGAME:  No, your Honor.

12        THE COURT:  Mr. Kelley?

13        MR. KELLEY:  No, your Honor.

14        THE COURT:  Now, Mr. Newland, you have heard Mr.

15   Burlingame tell me that you wish to enter a plea of guilty

16   today.  Is that true, do you wish to enter a plea of guilty?

17        THE DEFENDANT:  Yes.

18        THE COURT:  Have you had a full opportunity to discuss

19   your case with your attorneys and to discuss the consequence of

20   entering a plea of guilty?

21        THE DEFENDANT:  Yes, sir.

22        THE COURT:  Are you satisfied with your attorneys and

23   their representation of you?

24        THE DEFENDANT:  Yes, sir.

25        THE COURT:  On the basis of Mr. Newland's responses to

M9N8NEWP

1   my questions and my observations of his demeanor as he stands

2   here before me, in the first time that I have had an

3   opportunity to observe him, I do make the finding that he is

4   fully competent to enter an informed plea at this time.

5         Before I accept a plea from you, Mr. Newland, I am

6   going to be asking you a series of questions.  Those questions

7   are intended to satisfy me that you wish to plead guilty

8   because you are guilty and that you fully understand the

9   consequences of entering a plea of guilty.

10         I am going to be describing to you certain rights that

11   you have under the Constitution and laws of the United States.

12   You are going to be giving up those rights if you enter a plea

13   of guilty before me today.  So I need you to listen to me

14   carefully, and if you do not understand anything I am saying to

15   you, or anything I am asking you, or anything I am describing

16   to you, please stop me.  Either of your attorneys will be able

17   to answer any questions you have, and I am here as well, you

18   can ask me any question you want as well.  My concern is to

19   make certain that you understand what I am saying to you and

20   that you understand what I am asking you.

21         Do you understand that?

22         THE DEFENDANT:  Yes, sir.

23         THE COURT:  Under the Constitution and laws of the

24   United States, Mr. Newland, you have a right to a speedy and

25   public trial by a jury on the charges against you, which are

M9N8NEWP

1    contained in indictment S1 20 Cr. 351.

2              Do you understand those rights?

3              THE DEFENDANT:  Yes, sir.

4              THE COURT:  If there were a trial, you would be

5    presumed innocent and the government would be required to prove

6    you guilty by competent evidence and beyond a reasonable doubt.

7    You would not have to prove you were innocent at a trial.

8              Do you understand those rights?

9              THE DEFENDANT:  Yes, sir.

10             THE COURT:  If there were a trial, a jury composed of

11   12 people, selected from the Southern District of New York,

12   would have to agree unanimously that you were guilty.

13             Do you understand those rights?

14             THE DEFENDANT:  Yes, sir.

15             THE COURT:  You have the right to be represented by an

16   attorney at trial and at every other stage of the proceedings,

17   and if you cannot afford an attorney, one will be given to you

18   at no cost to you.

19             Do you understand those rights?

20             THE DEFENDANT:  Yes, sir.

21             THE COURT:  If there were a trial, you would have a

22   right to see and hear all of the witnesses against you and your

23   attorney could cross-examine them; you would have a right to

24   have your attorney object to the government's evidence and

25   offer evidence on your own behalf, if you so desire; and you

M9N8NEWP

1    would have a right to have subpoenas issued or other compulsory

2    process used to compel witnesses to testify in your defense.

3                    Do you understand those rights, sir?

4                    THE DEFENDANT:  Yes, sir.

5                    THE COURT:  If there were a trial, you would have the

6    right to testify, if you wanted to, but no one could force you

7    to testify if you did not want to.  In addition, no inference

8    or suggestion of guilt could be drawn if you decided not to

9    testify at trial.

10                   Do you understand those rights?

11                   THE DEFENDANT:  Yes, sir.

12                   THE COURT:  Do you understand that by entering a plea

13   of guilty today, Mr. Newland, you are giving up every one of

14   the rights I have listed now, you are waiving those rights, and

15   that you will not have a trial in this action?

16                   Do you understand that?

17                   THE DEFENDANT:  Yes, sir.

18                   THE COURT:  Do you understand that you have the right

19   to change your mind right now and refuse to enter a plea of

20   guilty?  You do not have to enter this plea of guilty if you do

21   not want to for any reason whatsoever.

22                   Do you understand that?

23                   THE DEFENDANT:  Yes, sir.

24                   THE COURT:  Have you received a copy of superseding

25   indictment S1 20 Cr. 351, sir?

M9N8NEWP

1            THE DEFENDANT:  Yes, sir.

2            THE COURT:  Did you read it?

3            THE DEFENDANT:  Yes, sir.

4            THE COURT:  Did you discuss it with your attorneys?

5            THE DEFENDANT:  Yes, sir.

6            THE COURT:  You have the right to have me read that

7    indictment right now in open court.  But if you don't want me

8    to, I won't.  What is your pleasure?

9            MR. BURLINGAME:  We will waive the public reading,

10   Judge.

11           THE COURT:  Mr. Newland, your attorney has told me

12   that you don't wish to have me read it in open court.  Is that

13   true?

14           THE DEFENDANT:  Yes, sir.

15           THE COURT:  I accept as a knowing and voluntary waiver

16   of the right to have the indictment read in open court.

17           Do you understand that you are charged in Count Two

18   with conspiracy to commit wire fraud, in violation of 18 U.S.C.

19   1349?

20           THE DEFENDANT:  Yes, sir.

21           THE COURT:  Do you understand that if you did not

22   plead guilty, the government would have to prove every part or

23   element of Count Two beyond a reasonable doubt at trial?

24           THE DEFENDANT:  Yes, sir.

25           THE COURT:  Ms. Feinstein, why don't you tell the

M9N8NEWP

1    defendant what the elements are of conspiracy to commit wire

2    fraud.

3              MS. VOGEL:  Yes, your Honor.

4              To prove the defendant guilty of Count Two, the

5    government would have to prove the following elements beyond a

6    reasonable doubt:

7              First, two or more persons, in some way or manner,

8    agreed to try to accomplish a common and unlawful plan to

9    commit wire fraud, as charged in the indictment;

10             Second, the defendant knew the unlawful purpose of the

11   plan and willfully joined in it.

12             The elements of wire fraud are:

13             1.  The defendant willfully participated in a scheme

14   to defraud or to obtain money or property by materially false

15   or fraudulent pretenses, representations, or promises with

16   knowledge of its fraudulent nature;

17             2.  The defendant acted with the intent to defraud;

18   and

19             3.  In advancing, furthering, or carrying out the

20   scheme, the defendant transmitted, or caused to be transmitted,

21   any writing, signal, or sound by means of a wire, radio, or

22   television communication in interstate commerce, or caused a

23   transmission of any writing, signal, or sound of some kind by

24   means of a wire, radio, or television communication in

25   interstate commerce.

M9N8NEWP

| 1 | The government would also have to prove venue is |

1          The government would also have to prove venue is

2     proper in the Southern District of New York by a preponderance

3     of the evidence.

4          THE COURT:  Thank you.

5          With the exception of the venue requirement, sir, do

6     you understand what the elements of this crime are that have to

7     be proven beyond a reasonable doubt?

8          THE DEFENDANT:  Yes, sir.

9          THE COURT:  Do you understand that the venue

10    requirement only has to be proven by the government by a

11    preponderance of the evidence?

12         Do you understand that?

13         THE DEFENDANT:  Yes, sir.

14         THE COURT:  Do you understand that the maximum

15    possible penalty for Count Two is 20 years in prison, plus a

16    maximum term of supervised release of three years, plus a

17    maximum fine of the greatest of $250,000 or twice the gross

18    pecuniary gain derived from the offense or twice the gross

19    pecuniary loss to individuals other than you resulting from the

20    offense, plus a $100 mandatory special assessment?

21         Do you understand that?

22         THE DEFENDANT:  Yes, your Honor.

23         THE COURT:  Now, when I was listing the various parts

24    of the maximum possible sentence, I said that the maximum term

25    of supervised release was three years.

M9N8NEWP

1          Do you understand that supervised release means you

2     are going to be subject to monitoring upon your release from

3     prison, and that monitoring will be under terms and conditions

4     that could lead to your reimprisonment without a jury trial for

5     all or part of the term of supervised release and without

6     credit for time previously served on post-release supervision

7     if you violate any term or condition of supervised release?

8          Do you understand that?

9          THE DEFENDANT:  Yes, sir.

10         THE COURT:  Do you also understand that as part of

11     your sentence, I can order restitution to anyone injured as a

12     result of your criminal conduct?

13         Do you understand that?

14         THE DEFENDANT:  Yes, sir.

15         THE COURT:  Do you understand that if I accept your

16     guilty plea and determine you to be guilty, that determination

17     may deprive you of such valuable civil rights as the right to

18     vote, the right to hold office, the right to serve on a jury,

19     and the right to possess any kind of firearm?

20         THE DEFENDANT:  Yes, sir.

21         THE COURT:  I gather you are a citizen of the United

22     Kingdom, is that correct?

23         THE DEFENDANT:  Yes, sir.

24         THE COURT:  Do you also understand, therefore, that

25     you may be subject to deportation by the Bureau of Immigration

M9N8NEWP

1    and Customs Enforcement of the Department of Homeland Security?

2                  THE DEFENDANT:  Yes, sir.

3                  THE COURT:  Did you discuss with your attorneys the

4    fact that you may be deported as a result of this guilty plea?

5                  THE DEFENDANT:  Yes, sir.

6                  THE COURT:  Did your attorney inform you that it's

7    almost certain or it's very likely that you are going to be

8    deported as a result of this guilty plea?

9                  THE DEFENDANT:  Yes, sir.

10                 THE COURT:  Under current law, there are sentencing

11   guidelines that judges must utilize in applying the factors,

12   set forth in 18 U.S.C. 3553(a), to determine what a fair and

13   reasonable and appropriate sentence is, and one that is

14   sufficient, but not greater than necessary, to meet the ends of

15   the criminal justice system.

16                 Have you talked to your attorneys about the sentencing

17   guidelines and how they work?

18                 THE DEFENDANT:  Yes, sir.

19                 THE COURT:  Do you understand I won't be able to

20   determine what the relevant guideline range is until after I

21   receive a presentence report that's completed by the probation

22   office?

23                 Do you understand that?

24                 THE DEFENDANT:  Yes, sir.

25                 THE COURT:  And you and your attorneys and the

M9N8NEWP

government will all have an opportunity to object to the

findings of fact in that presentence report, in front of me,

and if there are objections, I would then adjudicate those

objections.

Do you understand that?

THE DEFENDANT:  Yes, sir.

THE COURT:  Now, at some point the probation

department is going to interview you.  Your attorney will have

a right to be there.  They are going to use the information in

that interview in connection with the drafting of their report

to me.  I need you to give the probation department accurate

and complete information.

Do you understand that?

THE DEFENDANT:  Yes, sir.

THE COURT:  Now, after I receive that report and after

I have received submissions from you and your attorneys and the

government, as I say, I then determine what the appropriate

guideline range is.  But even after I determine what the

appropriate guideline range is, Mr. Newland, I then have the

ability to impose a sentence either higher or lower than that

called for by the guidelines, based on a departure from the

guidelines.

Do you understand that?

THE DEFENDANT:  Yes, sir.

THE COURT:  Even after I do that, I then must apply

M9N8NEWP

```
1    all of the factors that are set forth in a statute known as 18,
2    United States Code, Section 3553(a) to determine what a
3    reasonable and fair and appropriate sentence is.
4              Do you understand that?
5              THE DEFENDANT:  Yes, sir.
6              THE COURT:  You need to understand that if you're
7    sentenced to prison, the system of parole that used to exist in
8    the United States in the federal criminal justice system has
9    been abolished.  Therefore, if you're sentenced to prison, you
10   will serve that term in prison, you will not be released any
11   earlier on the basis of parole.
12             Do you understand that, sir?
13             THE DEFENDANT:  Yes, sir.
14             THE COURT:  Do you understand that if your attorney or
15   anyone else has attempted to estimate or predict what your
16   sentence will be, that their estimation or prediction could be
17   wrong?
18             THE DEFENDANT:  Yes, sir.
19             THE COURT:  No one can tell you what your sentence is
20   going to be, or even what it's likely to be, because I am the
21   one who is going to sentence you, and I don't know what your
22   sentence is going to be because, as of now, sir, I don't know
23   any of the facts here underlying this complaint against you
24   specifically.  So if I don't know what your sentence is going
25   to be, no one else can know at this point.
```

M9N8NEWP

1          Do you understand that?

2          THE DEFENDANT:  Yes, sir.

3          THE COURT:  And if you are sentenced to a period of

4    time of incarceration or other aspects of your sentence that

5    you don't expect or that are different from what anyone has

6    told you they are going to be, or if they are different from

7    what you, yourself, expect, you still are going to be bound to

8    this guilty plea, sir, and you won't be allowed to withdraw it.

9          Do you understand that?

10          THE DEFENDANT:  Yes, sir.

11          THE COURT:  Now, I have a document here.  It's dated

12    September 22.  It's six pages long.  It's addressed to Mr.

13    Burlingame.  It's signed by Ms. Vogel.  I am going to mark it

14    as Government Exhibit No. 1.  I am going to ask my deputy to

15    show you the last page.

16          Is that your signature on the last page, Mr. Newland?

17          THE DEFENDANT:  Yes, sir.

18          THE COURT:  Did you read that agreement before you

19    signed it?

20          THE DEFENDANT:  Yes, sir.

21          THE COURT:  Did you discuss it with your attorneys

22    before you signed it?

23          THE DEFENDANT:  Yes, sir.

24          THE COURT:  Did you understand it completely at the

25    time you signed it?

M9N8NEWP

1              THE DEFENDANT:  Yes, sir.

2              THE COURT:  Have the attorneys answered any questions

3    you may have had about that agreement before you signed it?

4              THE DEFENDANT:  Yes, sir.

5              THE COURT:  Does this agreement, Government Exhibit

6    No. 1, constitute your complete and total understanding of the

7    entire agreement between the government, your attorneys, and

8    yourself?

9              THE DEFENDANT:  Yes, sir.

10             THE COURT:  Is everything about your plea and sentence

11   contained in this agreement?  Are there any side deals that I

12   should know about?

13             THE DEFENDANT:  No, sir.

14             THE COURT:  Has anyone offered you any inducements or

15   threatened you or forced you to plead guilty or to enter into

16   the plea agreement?

17             THE DEFENDANT:  No, sir.

18             THE COURT:  Do you understand that in this plea

19   agreement, sir, you have admitted the forfeiture allegation

20   with respect to Count Two and have agreed to forfeit to the

21   United States a sum of money equal to $76,000, and all right,

22   title, and interest that you have in the specific property of

23   Personal Distance A, Untitled 2016 painting, Untitled 2007

24   print, and a Jean Prouvé desk?

25             Do you understand that?

M9N8NEWP

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  I have in front of me another document

3    entitled, "Consent Preliminary Order of Forfeiture as to

4    Specific Property/Money Judgment."

5          Have you signed that document as well?

6          I can have my deputy hand it down to you.

7          THE DEFENDANT:  Yes, sir.

8          THE COURT:  I will have her show it to you.

9          THE DEFENDANT:  Yes, sir.

10         THE COURT:  Mr. Burlingame, you have agreed to that?

11         MR. BURLINGAME:  Yes, your Honor.

12         THE COURT:  I am going to sign that order.

13         I have now signed the consent preliminary order of

14   forfeiture.

15         Do you understand that in Government Exhibit No. 1,

16   that is the plea agreement, I am going back to that, you have

17   agreed to make restitution in the amount ordered by the court?

18         THE DEFENDANT:  Yes, sir.

19         THE COURT:  Do you understand that in this document,

20   that is what I am calling the plea agreement, Government

21   Exhibit No. 1, you have stipulated, sir, that the guideline

22   range is 121 to 151 months?

23         Do you understand that?

24         THE DEFENDANT:  Yes, sir.

25         THE COURT:  Do you also understand that this is simply

M9N8NEWP

1    an agreement between the parties and that the actual guideline

2    range is something decided upon by me, not by the parties?

3              Do you understand that?

4              THE DEFENDANT:  Yes, sir.

5              THE COURT:  Do you understand that in this agreement,

6    you have agreed not to file a direct appeal and you have agreed

7    not to bring a collateral challenge to the sentence if I

8    sentenced you to 151 months in prison or fewer months?

9              THE DEFENDANT:  Yes, sir.

10             THE COURT:  Do you understand that in this plea

11   agreement, you have said that you recognize that your guilty

12   plea and conviction make it "very likely" that your removal

13   from the United States is presumptively mandatory, and that at

14   a minimum, you're at risk of being removed or suffering other

15   adverse immigration consequences?

16             Do you understand that?

17             THE DEFENDANT:  Yes, sir.

18             THE COURT:  In this agreement, you acknowledge that

19   you discussed the possible immigration consequences, including

20   removal from the United States, from your guilty plea and

21   conviction, with your defense counsel?

22             THE DEFENDANT:  Yes, sir.

23             THE COURT:  Did you, in fact, discuss the possible

24   immigration consequences, including removal from the United

25   States, with your defense counsel?

M9N8NEWP

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  Do you understand that in this agreement,

3     you agreed that you will have no right to withdraw your guilty

4     plea based on any actual or perceived adverse immigration

5     consequences, including removal, resulting from a guilty plea

6     and conviction?

7          THE DEFENDANT:  Yes, sir.

8          THE COURT:  Do you understand that in this plea

9     agreement, you have agreed that you will not challenge your

10     conviction or sentence, either on direct appeal or through

11     litigation under collateral attack, on the basis of any actual

12     or perceived adverse immigration consequence, including

13     removal, that results from this guilty plea?

14          THE DEFENDANT:  Yes, sir.

15          THE COURT:  Do you understand that you have waived any

16     defense based on the statute of limitations?

17          THE DEFENDANT:  Yes, sir.

18          THE COURT:  Mr. Burlingame, do you know of any valid

19     defense that would prevail at trial and know of any reason why

20     Mr. Newland should not be permitted to plead guilty?

21          MR. BURLINGAME:  No, your Honor.

22          THE COURT:  In your view, sir, is there an adequate

23     factual basis underlying Mr. Newland's plea today?

24          MR. BURLINGAME:  There is, Judge.

25          THE COURT:  Ms. Feinstein, in the view of the

M9N8NEWP

1    government, is there an adequate factual basis underlying this

2    defendant's plea today?

3                MS. VOGEL:  Yes, your Honor.

4                Just to be clear, I am Ms. Vogel.

5                THE COURT:  That's the second or third time I called

6    you Ms. Feinstein.  I apologize.

7                MS. VOGEL:  That's fine, your Honor.  I just wanted to

8    make sure it was clear.  We have a similar haircut.

9                THE COURT:  I do apologize.  There is a theory that

10   all assistant U.S. attorneys are interchangeable, but at some

11   point they are not.  You are Ms. Vogel.

12               Mr. Newland, tell me now what you did that makes you

13   guilty of Count Two.

14               I see you are about to read from something.  It is

15   perfectly fine with me.  I assume your attorney helped you with

16   that, which is all right as well.  But I do need you to tell me

17   that what you are about to read is in fact true.  Is that

18   correct?

19               THE DEFENDANT:  It is.

20               THE COURT:  Please read slowly.

21               THE DEFENDANT:  Between 2016 and 2019, I worked for

22   Inigo Philbrick.  I agreed with him and others to tell lies in

23   order to sell works of art and secure loans on art, as well as

24   to avoid making payments owed to clients, and to conceal our

25   fraud.  These included lies about the ownership status of the

M9N8NEWP

1    true price paid for numerous artworks.  During the course of

2    this conspiracy, and to further our fraud, I sent e-mails and

3    spoke on the phone to a fraud victim located in Manhattan.

4              THE COURT:  To a what victim?

5              THE DEFENDANT:  To a fraud victim.

6              THE COURT:  A fraud victim located in Manhattan.

7    Thank you.

8              When you did these acts, sir, did you know that what

9    you were doing was wrong and illegal?

10             THE DEFENDANT:  Yes, sir.

11             THE COURT:  Ms. Vogel, why don't you summarize the

12   evidence that the government has.

13             MS. VOGEL:  Yes, your Honor.

14             Evidence at trial would include testimony from the

15   victims of this fraud; e-mail and text message communications

16   both from this defendant, Mr. Newland, and Inigo Philbrick,

17   between each other and with various fraud victims; invoices,

18   purchase contracts, and loan agreements regarding artworks; and

19   bank records regarding the financial transactions for these

20   artworks.

21             THE COURT:  Mr. Newland, how do you now plead to the

22   charge in Count Two of indictment S1 20 Cr. 351, guilty or not

23   guilty, sir?

24             THE DEFENDANT:  Guilty.

25             THE COURT:  Are you pleading guilty because you are

M9N8NEWP

1    guilty, sir?

2            THE DEFENDANT:  Yes, sir.

3            THE COURT:  Are you pleading guilty voluntarily and of

4    your own free will?

5            THE DEFENDANT:  Yes, sir.

6            THE COURT:  Mr. Burlingame, do you wish anything

7    further on the factual allocution?

8            MR. BURLINGAME:  No, your Honor.

9            THE COURT:  Ms. Vogel.

10           MS. VOGEL:  No, your Honor.

11           THE COURT:  Because you acknowledge you are guilty as

12   charged, because I find you know your rights and are waiving

13   them knowingly and voluntarily, because I find your plea is

14   entered knowingly and voluntarily and is supported by an

15   independent basis in fact containing each of the essential

16   elements of the offense, I accept your guilty plea, sir, and I

17   determine you to be guilty of Count Two of indictment S1 20 Cr.

18   351.

19           Mr. Newland, let me ask you a question.  Why did you

20   commit this crime?

21           THE DEFENDANT:  Sir, because I had wanted to work with

22   Inigo Philbrick for some time and this was part of a situation

23   that he got himself into, and I was working with him to resolve

24   that, and he told me the best way to help.

25           THE COURT:  The best way to?  I just didn't hear.  The

M9N8NEWP

1  best way to?

2          THE DEFENDANT:  So, we were in a position where we

3  needed to raise money, and this was the way that it had to be

4  done, or the way that we believed it had to be done.  So I,

5  together with Inigo, committed these frauds in order to keep

6  the business afloat.

7          THE COURT:  Thank you.

8          I am going to set the date for sentencing for March

9  23, 2023, at 4 p.m., in this courtroom.

10          Let's deal with bail now.

11          Government.

12          MS. VOGEL:  Yes, your Honor.

13          So the parties do have a proposed bail package.  In

14  recognition that the defendant has consented to extradition,

15  pled guilty on his first appearance, and based on the

16  government's assessment of his risk of flight, the government

17  is prepared to propose the following bail package.

18          THE COURT:  Just a moment.

19          Yes, ma'am.

20          MS. VOGEL:  So the proposed bail package includes a

21  $400,000 bond to be secured by $200,000 cash.  An initial

22  $80,000 will be deposited with the court before the defendant

23  is permitted to return to the United Kingdom.  The remaining

24  $120,000 of the $200,000 cash portion of the bond are to be

25  deposited within two weeks of the United Kingdom releasing the

M9N8NEWP

1    250,000 pounds that are currently securing the defendant's bond

2    in the United Kingdom.  We are requesting four financially

3    responsible cosigners, who are the defendant's family members

4    located in the United Kingdom, and the government has

5    interviewed those family members already.  We are also asking

6    for surrender of the defendant's --

7              THE COURT:  And they are acceptable --

8              MS. VOGEL:  Yes.

9              THE COURT:  -- as financial cosigners?

10             MS. VOGEL:  Correct.

11             Surrender of the defendant's passport to Pretrial

12   Services.

13             THE COURT:  I take it his passport is from the United

14   Kingdom?

15             MS. VOGEL:  That's correct.

16             THE COURT:  Mr. Burlingame, does he have any other

17   travel documents?

18             MR. BURLINGAME:  No, your Honor.

19             THE COURT:  Go ahead.

20             MS. VOGEL:  The passport is currently in the custody

21   of the FBI.  So surrender of the passport to Pretrial Services

22   until the $80,000 securing the bond has been received by the

23   court.

24             Upon the defendant's return to the United Kingdom, the

25   defendant will surrender his passport to his counsel, who will

M9N8NEWP

1    keep it in safekeeping.

2              THE COURT:  Do you have that, Mr. Burlingame?

3              MR. BURLINGAME:  Yes.  I understand.

4              THE COURT:  Do you have his passport now?

5              MR. BURLINGAME:  I do not have his passport now.  I

6    believe the agents do.  He came in last night and spent the

7    night at MDC.

8              THE COURT:  Thank you.

9              MS. VOGEL:  And that travel will be permitted to the

10   United Kingdom, where the defendant resides, and to the

11   Southern and Eastern Districts of New York for purposes of

12   coming here for the case.

13             We ask for supervision by Pretrial Services as

14   directed.

15             THE COURT:  Mr. Burlingame, that's all agreed upon?

16             MR. BURLINGAME:  Yes, your Honor.

17             THE COURT:  I hereby order it with the additional

18   condition that the four financially responsible cosigners have

19   signed the bond prior to Mr. Newland's return to the United

20   Kingdom.

21             MS. VOGEL:  And, your Honor, we would ask that the

22   defendant be permitted to be released today on his signature

23   and with the surrender of his passport to pretrial.  And my

24   understanding is that the $80,000 will be deposited shortly

25   with the court.

M9N8NEWP

1          THE COURT:  So you're asking for his release prior to

2     the deposit of the $80,000 and to any other security; is that

3     what you're doing?

4          MS. VOGEL:  Yes, your Honor.  My understanding is that

5     defense counsel has the certified check that is ready to be

6     deposited with the court.  It couldn't be deposited in advance

7     and it takes a little bit of time for that to be processed.

8          THE COURT:  Mr. Burlingame, you were holding up the

9     envelope.

10         MR. BURLINGAME:  I am.  I have the certified check in

11    here.

12         THE COURT:  Fine.  Then I will allow his release.

13         I take it you are going to go to the clerk of court

14    and deposit that.

15         MR. BURLINGAME:  Yes, Judge.

16         THE COURT:  All right.  I think I have handled

17    everything.

18         Is there anything else, government?

19         MS. VOGEL:  Your Honor, we would just ask, as the

20    arraignment and plea have been rolled all into one proceeding,

21    for formality sake, if the defendant could enter a plea of not

22    guilty as to Count One, as there has been no plea entered

23    either way at this point as to Count One.

24         THE COURT:  Just a moment.

25         MS. VOGEL:  The understanding is that upon sentencing,

M9N8NEWP

1    the government will move to dismiss Count One.

2                THE COURT:  What you're telling me, and you're quite

3    right, is there has been no plea entered in regard to Count

4    One.  Is that right?

5                MS. VOGEL:  That's right.

6                THE COURT:  So let's do that now.

7                Do you want to talk to your client so that he

8    understands what is about to happen?

9                MR. BURLINGAME:  He understands, your Honor.

10               THE COURT:  Mr. Newland, how do you plead to Count One

11   of this indictment, guilty or not guilty, sir?

12               THE DEFENDANT:  Not guilty.

13               THE COURT:  I accept your plea of not guilty, Mr.

14   Newland.  Thank you.  You may be seated.

15               Thank you, government.

16               Is there anything else?

17               MS. VOGEL:  No.  Thank you.

18               THE COURT:  Defense, is there anything else?

19               MR. BURLINGAME:  No, your Honor.

20               THE COURT:  Mr. Newland, you have heard the conditions

21   of your release and the fact that you actually are going to be

22   released at this moment with Mr. Burlingame depositing the

23   $80,000 cash and your passport -- where is the passport going

24   to be?

25               MS. VOGEL:  It will be with pretrial.  It is currently

M9N8NEWP

1    with the FBI case agent.

2                THE COURT:  Passport will be held by pretrial.

3                Do you understand that you have to follow all of the

4    conditions of your release while you're released?  Do you

5    understand that?

6                THE DEFENDANT:  Yes, sir.

7                THE COURT:  Do you understand that any violation of

8    those conditions can be met with severe consequences?

9                THE DEFENDANT:  Yes, sir.

10               THE COURT:  Do you understand that you're obligated

11   under those conditions to return to this courtroom on March 23,

12   2023, at 4 p.m., or any adjourned date I set for your

13   sentencing?

14               THE DEFENDANT:  Yes, sir.

15               THE COURT:  All right.  I expect to see you then on

16   the date of sentencing or any adjourned date I set.

17               If there is nothing else, I think we are finished.

18   Thank you.

19               (Adjourned)

20

21

22

23

24

25